UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NATE MYERS,

                            Plaintiff,

               v.

COLLEEN DOLAC, et al.,

                           Defendants.

<u>DECISION & ORDER</u>

09-CV-6642P

_____

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Nathaniel Myers ("Myers") has sued defendants Colleen Dolac ("Dolac"), Robert Koch ("Koch"), Timothy Howard ("Howard"), Michael Reardon ("Reardon"), John Anthony ("Anthony"), Kathleen Davidson ("Davidson"), Thomas Diina ("Diina"), Rebecca Calhoun ("Calhoun"), Susan Wilkie ("Wilkie") and the County of Erie (the "County") (collectively, "defendants"), asserting various federal and state claims arising from his incarceration in the Erie County Holding Center in 2009.[1]  (Docket # 91).  Currently before the Court is defendants' motion for summary judgment.  (Docket # 100).

---

[1]  Specifically, the complaint asserts the following federal causes of action under 42 U.S.C. § 1983:  (1) a claim against Dolac, Davidson and Koch for violation of Myers's privacy rights and deliberate indifference to his medical needs, in violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution and in violation of the Health Insurance Portability and Accountability Act ("HIPAA") (Count One); (2) a claim against Howard, Koch, Dolac and Davidson for failing to protect Myers by placing him in a population that contained contagious diseases or viruses, in violation of the Eighth and Fourteenth Amendments to the United States Constitution (Count Two); (3) a claim against Calhoun, Wilkie, Howard and Koch for interfering with Myers's legal mail and access to the courts, in violation of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution (Count Three); (4) a claim against Reardon, Anthony, Koch, Diina and Howard for interference with Myers's ability to file and appeal grievances, in violation of the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution (Count Four); and, (5) a municipal liability claim against the County (Count Five). The complaint also purports to assert various state common law and constitutional claims.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a magistrate judge. (Docket # 36). For the reasons discussed below, defendants' motion for summary judgment is granted in part and denied in part.

## Summary of Parties' Arguments

Defendants seek dismissal of Myers's complaint in its entirety under 42 U.S.C. § 1997e(e) on the grounds that he has failed to allege a physical injury. (Docket # 100-6 at 5-8). With respect to his claims against Dolac asserting violations of constitutional privacy rights and HIPAA, defendants contend that Myers has no constitutionally protected confidentiality in his medical condition (Hepatitis C[2]) and that HIPAA does not authorize a private right of action. (*Id.* at 8-9). Defendants also seek summary judgment on Myers's deliberate indifference claim against Dolac on the grounds that Myers was not suffering from a serious medical need and, even if he had been, Dolac's conduct did not rise to the level of deliberate indifference. (*Id.* at 10-17).

With respect to Myers's claims against Calhoun, Wilkie, Howard and Koch for interference with his legal mail and access to the courts, defendants maintain that Myers has failed to raise a triable issue of fact that the alleged interference impeded his litigation. (*Id.* at 20). Defendants also argue that Howard and Koch are entitled to summary judgment because they were not personally involved in the alleged opening of Myers's legal mail and that Myers

---

[2] "Hepatitis C [is] a chronic viral liver disease that can increase the risk of liver cancer and can lead to inflammation, scarring, and cirrhosis of the liver. Cirrhosis ultimately can lead to liver failure and death." *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006).

has failed to establish the existence of an unlawful policy or practice permitting the opening of his legal mail.[3] (*Id.* at 17-20).

Myers maintains that 42 U.S.C. § 1997e(e) does not warrant dismissal of his complaint because he seeks nominal and punitive damages, as well as injunctive relief. (Docket # 102 at 5-6). Myers contends that he does have a constitutionally protected privacy interest in his medical condition, that Hepatitis C does constitute a serious medical need and that Dolac deliberately denied him treatment for the disease. (*Id.* at 7-8). Finally, Myers argues that summary judgment should be denied on his mail interference claim because the seizure of his legal mail impeded his ability to effect service of the summons in this lawsuit.[4] (*Id.* at 10-11).

## A. Factual Background

In support of their motion for summary judgment, defendants have submitted no affidavits of anyone with personal knowledge of the events described in Myers's complaint. Instead, defendants support their motion with a Local Rule 56(a) Statement of Undisputed Material Facts (Docket # 100-1), which attaches Myers's Third Amended Complaint (Docket # 100-1 at Exhibit ("Ex.") B), transcripts of the two depositions of Myers (Docket # 100-1 at Exs. A and D), and an affidavit of Edwin Heidelberger, M.D., which attaches Myers's medical records (Docket # 100-1 at Ex. C).

---

[3] Defendants do not seek summary judgment on Counts Two, Four and Five or on any state law claims (other than to request dismissal of the complaint in its entirety under 42 U.S.C. § 1997e(e)). Nor do they seek judgment on Myers's privacy and deliberate indifference claims asserted against Koch and Davidson.

[4] Myers also requests that the Court strike defendants' Statement of Material Facts on the grounds that it fails to comply with Federal Rule of Civil Procedure 11(a), which requires that every pleading, written motion or other paper contain a signature of at least one attorney of record. (Docket # 102 at 5). A review of defendants' Statement of Material Facts reveals that it contains an electronic signature of Michael J. Pacifico, Esq. (Docket # 100-1 at 7); electronic signatures comply with the Administrative Procedures Guide for the Western District of New York. *See* Western District of New York Administrative Procedures Guide § 2(g). Accordingly, Myers's request is denied.

In opposition, Myers has submitted a Rule 56(a) Statement of Disputed Facts (Docket # 102 at 13-19), his own affidavit (*id.* at 20-24), an affidavit of an inmate who purportedly witnessed some of the events described in the Third Amended Complaint (Docket # 103 at 2-3), several grievances (Docket # 102 at 37-38; Docket # 103 at 4-7, 16-18) and medical records (Docket # 103 at 8-15).

The following facts are undisputed except where otherwise noted. Myers was incarcerated at the Erie County Holding Center ("ECHC") from 2008 through 2010. (Docket # 100-1 at ¶ 10 and Ex. A at 35; Docket # 102 at 15, ¶ 10). Myers contends that during his incarceration he was bitten by another inmate who was infected with the Hepatitis C virus. (Docket # 91 at ¶¶ 19, 49-51). On or before October 15, 2009,[5] Myers was diagnosed with Hepatitis C infection. (*Id.* at ¶ 21; Docket # 103 at 11). According to Myers, prior to his incarceration at ECHC, he had not been exposed to the virus. (Docket # 91 at ¶ 22).

On October 15, 2009, Myers was seen by a physician at the Erie County Medical Center ("ECMC") in order to follow up on his laboratory results related to his Hepatitis C diagnosis. (Docket # 100-4 at 60). During that visit, the physician instructed Myers to have a blood sample taken for additional testing as soon as possible in order to begin "immediate" treatment. (*Id.* at 60-62; Docket # 100-1 at Ex. A at 7-8 and Ex. D at 8-9, 35). In addition, the doctor told Myers that he needed to be seen by a gastrointestinal ("GI") physician prior to treatment. (Docket # 100-1 at Ex. A at 25-26 and Ex. D at 11; Docket # 100-4 at 60-62). The medical records documenting Myers's appointment with the ECMC physician contain a notation

_____

[5] A review of the medical records suggests that the Hepatitis C diagnosis may have occurred as early as September 2009. (Docket # 103 at 9; Docket # 100-4 at 24). At his deposition, Myers testified that he learned of the diagnosis in approximately August 2009. (Docket # 100-1 at Ex. A at 16).

that Myers would be "refer[red] to GI for evaluation for Interferon/Ribavirin." (Docket # 103 at 12; Docket # 100-4 at 60-62). They also contain a "Gastroenterology Referral Form" referring Myers to the GI clinic to be "evaluate[d] for treatment." (Docket # 103 at 13).

On October 16, 2009, Myers approached Dolac, a registered nurse employed by the Erie County Department of Health who worked at ECHC, while she was distributing medication on Myers's cellblock. (Docket # 100-1 at ¶ 4 and Ex. A at 7-8). According to Myers, he approached Dolac and asked, "Ms. Colleen, is there any type of way that you can get me upstairs to take my blood for ECMC, they said they need ASAP blood." (*Id.* at Ex. A at 9). Myers claims that Dolac screamed in response, "Yeah, Myers I'm the person who gave you hepatitis C." (*Id.* at 7). According to Myers, Dolac repeated the statement as she walked through the cellblock. (*Id.* at 7-10, 12). Myers contends that approximately thirteen other inmates who were on the block that day overheard Dolac's statements. (*Id.* at 11-12, 14).

Myers has submitted a sworn affidavit of Richard Buster ("Buster"), an inmate who was present on October 16, 2009. (Docket # 103 at 2-3). The affidavit asserts:

> I heard "Mr. Myers" ask the "nursu" [sic] collen" [sic] about his [b]lood work from E.C.M.C. than [sic] she reacted unprofessinaly [sic] by calling at the "top of her lungs" and "screaming" "[y]es" Mr. Myers" I'm the one who gave you the "hep" C." She then [r]epeated the above statment [sic] servil [sic] times up and down the unit of brovo long low side at the E.C.H.C. there was 14 [i]nmates on the [b]lock who heard the same thinging [sic] I heard coming from "nursu" [sic] "collen dolac."

(*Id.*). Myers contends that he immediately requested a grievance form. (Docket # 100-1 at Ex. A at 12-13; Docket # 102 at 37-38). In addition to submitting a grievance about the incident, he

also submitted a grievance complaining that he was not receiving treatment for his Hepatitis C condition. (Docket # 100-1 at Ex. A at 21-22; Docket # 103 at 4).

Myers contends that he was disciplined as a result of the incident and sentenced to six months of keeplock confinement. (Docket # 100-1 at Ex. A at 16, 19-20). After serving approximately twenty days, Myers alleges, he was approached by a corrections officer who threatened him in order to obtain Myers "sign off" on the grievances relating to the incident. (*Id.* at 20-22). Myers contends that after he "signed off," he was released from keeplock. (*Id.*; Docket # 100-1 at Ex. D at 20-21). Myers also maintains that other inmates, including Buster, stopped associating with him as a result of Dolac's disclosure about his condition. (Docket # 102 at 22, ¶¶ 7-8).

Myers claims that after the October 16, 2009 incident, Dolac ignored or refused Myers's sick call requests. (Docket # 100-1 at Ex. D at 29-32). Further, Myers contends that Dolac told him that she would not respond to his sick call requests. (*Id.* at 32) ("she told me that, specifically, I am not putting in nothing for him. She said that."). In addition, Myers contends that he was never given a treatment plan for Hepatitis C. (*Id.* at 12). Although Myers's blood was drawn, Myers contends that he was never permitted to see a GI physician, was never given any medication for Hepatitis C or advised why treatment, which the ECMC physician had stated was necessary, was in fact unnecessary. (Docket # 100-1 at Ex. A at 24-27 and Ex. D at 12-13, 32-35). ECMC records dated November 4, 2009 indicate that Myers was "[a]waiting GI referral for [prescription] (Interferon)." (Docket # 100-4 at 65).

Myers filed multiple grievances about the lack of treatment. (Docket # 103 at 4-7). Davidson responded in October 2009 stating, "We the staff have followed up [with]

ECMC [and] you will be seen as per their schedule." (*Id.* at 4). The latest grievance in the record, dated December 2009, states:

> [I] would like to know when I will be getting treated for Hepitias [sic] C Infection or if any is going to be given. I don't want this virus to become chronic and its been three months since I been notified that I do indeed have this virus.

(*Id.* at 7).

As of April 1, 2011, Myers still had not received medication for Hepatitis C. (Docket # 100-1 at Ex. A at 25). According to Myers, the Hepatitis C "was causing degeneration of his physical health." (Docket # 102 at 22, ¶ 8). Specifically, Myers alleged that he suffered "chronic diarrhea" and the failure to obtain treatment left him "scared for [his] life." (Docket # 100-1 at Ex. A at 27, 39).

In support of their motion for summary judgment, defendants have submitted an affidavit of Edwin Heidelberger, M.D. ("Heidelberger"). According to Heidelberger, the care and treatment Myers received was appropriate and consistent with "the accepted standard of care." (Docket # 100-1 at Ex. C at ¶¶ 5-6). Heidelberger's affidavit, however, does not explain the information contained in the medical records, which are simply attached to the affidavit, or why the treatment or lack of treatment was appropriate for Myers's medical condition. (*Id.*).

In January 2010, Calhoun and Wilkie, both employees in the mail room at ECHC, allegedly opened Myers's legal mail that had been sent to him by the United States Department of Justice. (Docket # 100-1 at ¶¶ 7-8; Docket # 91 at ¶¶ 56-59). Myers testified that on January 8, 2010, a corrections officer delivered Myers's mail to him in his cell. (Docket # 100-1 at Ex. D at 23). Myers contends that the mail consisted of an envelope addressed to him from the United

States Marshal's Service which related to service of process upon Dolac in this litigation. (Docket # 100-1 at Ex. A at 29-31). Myers claims that he was handed a blank piece of paper that contained only his name, DIN number and the name of the facility, which was stapled to an envelope addressed to him. (*Id.*). Myers believes that the envelope contained additional documents that were improperly seized. (*Id.* at 30-31; Docket # 100-1 at Ex. D at 24-25).

Myers grieved the alleged opening of his legal mail. (Docket # 103 at 16-18). After the January 8, 2010 incident, Myers testified that he generally received his legal mail, although it was occasionally delivered with tape on the envelope.[6] (Docket # 100-1 at Ex. D at 25-28). Myers conceded in his deposition that the opening of his legal mail did not prevent him from commencing this lawsuit and that he did not suffer any injury as a result of the opening of his legal mail. (Docket # 100-1 at Ex. A at 33-34, 42-43). In contrast to that testimony, Myers now claims in conclusory fashion that the mail incident "did impede timely service of the instant litigation upon the defendants." (Docket # 102 at 23, ¶ 11).

## B. <u>Discussion</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this determination, the court must assess whether there are any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

---

[6] During his first deposition, Myers testified that his legal mail was opened outside of his presence on at least seven to nine different occasions. (Docket #100-1 at Ex. A at 32). At his second deposition, Myers testified that his legal mail was opened outside of his presence only one time and that his legal mail had tape on the envelope on a number of occasions. (Docket # 100-1 at Ex. D at 25-26). The complaint contains allegations relating to only one instance of the opening of his legal mail. (Docket # 91 at ¶¶ 55-62).

(1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991). A

fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir.

2000). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also

Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

      The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact, after which the non-moving party must come forward with

sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based

upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant

v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 586 (1986)). The party seeking to avoid summary judgment "must

do more than make broad factual allegations and invoke the appropriate statute. The [party] must

also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual

issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995);

*see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

      As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of
> the litigation is carefully limited to discerning whether there are
> any genuine issues of material fact to be tried, not to deciding
> them. Its duty, in short, is confined at this point to issue-finding; it
> does not extend to issue-resolution . . . . [I]t must be kept in mind
> that only by reference to the substantive law can it be determined
> whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## 1. **Physical Injury Requirement of 42 U.S.C. § 1997e(e)**

Section 1997e(e) of Title 42 limits a prisoner's ability to recover damages for mental and emotional injuries. Specifically, it provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Section 1997e(e) applies to all federal civil actions, including actions asserting constitutional violations. *See Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002) ("Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury"). Although Section 1997e(e) prohibits a claim for compensatory damages for emotional injury where there is no physical injury, "it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Id.* at 416; *see also Lee v. DelFavero*, 2005 WL 2387820, *6 (N.D.N.Y. 2005) ("[t]he absence of physical injury does not totally bar claims by inmates . . . [because] [S]ection 1997e(e) does not preclude claims for nominal damages, punitive damages, or declaratory or injunctive relief").

Defendants seek dismissal of Myers's complaint on the grounds that he has failed to establish that he suffered a physical injury. (Docket # 100-6 at 6-8). Specifically, defendants contend that Myers has not alleged any physical injury as a result of the disclosure of his Hepatitis C diagnosis, the denial of treatment for Hepatitis C or the opening of his legal mail.[7]

---

[7] Although defendants' motion seeks dismissal of the complaint in its entirety, defendants have not addressed whether Myers adequately alleged a physical injury with respect to Counts Two, Four and Five.

(*Id.* at 6-8). This argument ignores Myers's assertions and testimony that he suffered from "chronic diarrhea," that the failure to treat the Hepatitis C "caus[ed] degeneration" to Myers's "physical health" and that he contracted Hepatitis C after being bitten by another inmate. (Docket # 91 at ¶¶ 49-51; Docket # 100-1 at Ex. A at 27; Docket # 102 at 22, ¶ 8).

In any event, each cause of action asserted by Myers seeks, in addition to compensatory damages, punitive and nominal damages, as well as injunctive relief.[8] (Docket # 91 at ¶¶ 47, 54, 62, 68, 74). Accordingly, Section 1997e(e) does not bar Myers's claims. *See Thompson v. Carter*, 284 F.3d at 418 (even in the absence of physical injury, Section 1997e(e) does not bar claims seeking injunctive or declaratory relief or claims for nominal or punitive damages); *Garcia v. Watts*, 2009 WL 2777085, *20 (S.D.N.Y. 2009) ("[i]f, however, the plaintiff alleges the violation of a constitutional right, the action is not entirely barred and the plaintiff may obtain injunctive or declaratory relief, and nominal or punitive damages, but not compensatory damages irrespective of any physical injury if [he] proves that violation") (quoting *Lipton v. Cnty. of Orange, New York*, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004)); *Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 440-41 (E.D.N.Y. 2009) ("[t]he plaintiff is not required to establish an actual physical injury . . . [;] [i]f inadequate medical care created a serious risk of harm and rose to a violation of the plaintiff's civil rights, he is entitled to recover nominal damages even if the plaintiff sustained no injury").

---

[8] Whether Myers may seek injunctive relief or punitive damages against each of the named defendants is not an issue currently before the Court.

## 2.  **Disclosure of Myers's Medical Condition**

Defendants contend that they are entitled to summary judgment dismissing Myers's claims arising from Dolac's alleged disclosure of Myers's Hepatitis C condition.  First, defendants contend that Myers does not have a constitutionally protected privacy right with respect to his Hepatitis C status.  (Docket # 100-6 at 9-10).  Second, defendants contend that Myers's HIPAA claim must be dismissed because HIPAA does not authorize private rights of action.

### a.  **Constitutional Privacy Rights**

An inmate's right to prevent the unwanted disclosure of his personal health information is protected by the Fourteenth Amendment's Due Process Clause.  *Davidson v. Desai*, 817 F. Supp. 2d 166, 191 (W.D.N.Y. 2011) (citing *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (Fourteenth Amendment right to privacy encompasses the "right to protection regarding information about the state of one's health")).  The right to confidentiality, however, is not absolute.  *See Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999).  First, "the interest in the privacy of medical information will vary with the condition."  *Id.* at 111.  Second, although "[p]rison inmates do not shed all fundamental protections of the Constitution at the prison gates," inmates retain only "those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections systems."  *Id.* at 112 (internal quotations omitted).  Thus, "[p]rison officials may impinge upon [an inmate's right to confidentiality] only to the extent that their actions are 'reasonably related to legitimate penological interests.'"  *Harris v. Howard*, 2009 WL 537550, *15 (N.D.N.Y. 2009) (quoting *Powell v. Schriver*, 175 F.3d at 112).

Myers alleges, and defendants have not refuted, that Dolac disclosed his diagnosis to an entire cellblock of inmates. "[G]ratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . is *not* reasonably related to a legitimate penological interest." *Powell*, 175 F.3d at 112. The salient question is whether Hepatitis C is the type of condition that warrants constitutional protection.

Whether an inmate is entitled to constitutional protection against disclosure of a particular medical condition is determined on a case-by-case basis. *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 66 (2d Cir. 2011) ("[i]n considering claims that a constitutional right of privacy attaches to various serious medical conditions, we also proceed on a case-by-case basis"). A medical condition that is both serious in nature and the type that is "'excruciatingly private and intimate in nature' such as those 'likely to provoke . . . an intense desire to preserve one's medical confidentiality merits constitutional protection.'" *Id.* at 64 (omission in original) (quoting *Powell*, 175 F.3d at 111). Those conditions warranting constitutional protection are defined by "narrow parameters" dictated by society's views of those diseases. *Id.* at 66. Thus, when determining whether a particular condition justifies constitutional protection, courts must determine whether the disease is "contagious . . . or attributed in any way to socially repugnant conduct and whether it could be said that society as a whole views [the disease] as directly associated with any disease which might conceivably be characterized as loathsome." *Id.* (omission and alteration in original) (internal quotation omitted). In the prison context in particular, the constitutional right to confidentiality in a medical condition applies only to "unusual medical condition[s] which, if disclosed unnecessarily, would likely expose an inmate to ridicule, discrimination, or even potentially

violence, particularly when the word of the condition is likely to spread through humor or gossip." *Williams v. Perlman*, 2009 WL 1652193, *11 (N.D.N.Y.) (citing *Powell*, 175 F.3d at 112), *report and recommendation adopted in part*, 2009 WL 1652188 (N.D.N.Y. 2009).

Courts within this Circuit have accorded constitutional privacy protection to a handful of medical conditions only, including HIV, transsexualism and sickle cell anemia. *See Powell*, 175 F.3d at 112 (transsexualism); *Doe v. City of New York*, 15 F.3d at 267 (HIV); *Fleming v. State Univ. of New York*, 502 F. Supp. 2d 324, 343 (E.D.N.Y. 2007) (sickle cell anemia). On the other hand, courts have declined to recognize constitutional protection for many other medical conditions, including fibromyalgia, arthritis and sleep apnea. *See Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d at 68 (fibromyalgia); *Barnes v. Abdullah*, 2013 WL 3816586, *8 (S.D.N.Y. 2013) (arthritis); *Ross v. Westchester Cnty. Jail*, 2012 WL 86467, *9 (S.D.N.Y. 2012) (sleep apnea); *see also Hamilton v. Smith*, 2009 WL 3199531, *15 & n.18 (N.D.N.Y.) (rejecting plaintiff's Eighth and Fourteenth Amendment claims for disclosure of Hepatitis A condition finding Hepatitis A was not "serious medical need" and disclosures were "necessary to investigate . . . pending grievances"), *report and recommendation adopted as modified by*, 2009 WL 3199520 (N.D.N.Y. 2009); *Wilson v. Brock*, 2008 WL 4239564, *5 (N.D.N.Y. 2008) (no constitutionally protected confidentiality in parolee's participation in mandated drug or alcohol rehabilitation program). Of the three courts within the Circuit to address whether Hepatitis C merits constitutional protection, two courts did not reach the issue and the other determined that the condition did not warrant protection.[9] *See Alsaifullah v. Furco*,

---

[9] Two cases outside of this Circuit have found that inmates who alleged the improper disclosure of their HIV and Hepatitis status adequately pled a constitutional violation. *See Alfred v. Corr. Corp. of Am.*, 437 F. App'x 281, 285-86 (5th Cir. 2011) (claim alleging improper disclosure of inmate's HIV and Hepatitis B status was "not

14

2013 WL 3972514, *7-8 (S.D.N.Y. 2013) (dismissing privacy claim because disclosure was reasonably related to a legitimate penological interest irrespective of whether Hepatitis C status warranted constitutional protection); *Watson v. Wright*, 2010 WL 55932, *1 & n.1 (N.D.N.Y. 2010) ("[t]his Court finds no basis in *Powell* and its progeny for holding that, in a prison setting, plaintiff's Hepatitis C condition is the type of condition that gives rise to constitutional protection"); *see Makas v. Miraglia*, 2007 WL 724603, *15 (S.D.N.Y. 2007) (dismissing privacy claim because inmate failed to sufficiently allege personal involvement, but stating that "syphilis or hepatitis [are] conditions which arguably could subject [inmate] to opprobrium"), *aff'd in part and vacated in part on other grounds*, 300 F. App'x 9 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 1917 (2009).

   Hepatitis C is plainly a serious medical condition. *See Hilton v. Wright*, 2013 WL 873826, *10 (N.D.N.Y. 2013) ("[i]t is well-established that [Hepatitis C] is a serious medical condition") (citing *Hatzfeld v. Eagen*, 2010 WL 5579883, *10 (N.D.N.Y. 2010) (collecting cases), *report and recommendation adopted*, 2011 WL 124535 (N.D.N.Y. 2011)); *Johnson v. Wright*, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ("[c]ase law also recognizes that Hepatitis C qualifies as a serious condition") (collecting cases); *see also Ellis v. Mohenis Servs., Inc.*, 1998 WL 564478, *3 n.2 (E.D. Pa. 1998) (explaining that Hepatitis C virus remains in the blood and accounts for large percentage of cirrhosis, liver failure and liver cancer cases) (citing *Downs v.*

---

wholly baseless and . . . not frivolous as a matter of fact or law"); *Newman v. Poquette*, 2012 WL 487116, *2-3 (C.D. Cal.) (inmate adequately pled constitutional violation arising from disclosure of his HIV and Hepatitis status), *report and recommendation adopted*, 2012 WL 487089 (C.D. Cal. 2012). Finally, one court has held that Hepatitis C status does not merit constitutional protection. *See Perez v. Sheriff of Tangipahoa Parish*, 2011 WL 1226482, *9-10 (E.D. La.) (inmate diagnosed with Hepatitis C failed to state a claim for violation of constitutional right to privacy because plaintiff "ha[d] no extremely sensitive medical condition, such as HIV, that might entitle him to the very limited constitutional protection recognized in two circuits, but not the Fifth Circuit"), *report and recommendation adopted*, 2011 WL 1212940 (E.D. La. 2011).

*Hawkeye Health Servs., Inc.,* 1998 WL 348201, *3 (8th Cir. 1998) (citing *Stedman's Medical Dictionary* 784 (26th ed.1995)).  Hepatitis C "is not a disease, but a virus that can cause liver disease, and over time, liver damage . . . [and] can be spread through IV drug use, sexual contact, needle stick injury, tattooing, body piercing, or any other means of transferring blood."  *Bennett v. Corr. Med. Servs., Inc.*, 2008 WL 2064202, *2 (D.N.J. 2008).

    According to the Centers for Disease Control and Prevention ("CDC"), "[t]oday, most people become infected with the Hepatitis C virus by sharing needles or other equipment to inject drugs."  Hepatitis C Information for the Public, CDC, http://www.cdc.gov/hepatitis/C/index.htm (last visited September 9, 2013).  Similar to HIV, Hepatitis C is a condition which is associated with stigma and discrimination because it can be transmitted through sexual contact or intravenous drug use.  *See EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (plaintiff had substantial privacy concern in her Hepatitis B status; "the prejudice identified by plaintiff, of embarrassment and fear of stigmatization because she has [Hepatitis B], which is, like AIDS a sexually and blood transmitted disease, is real"); *see also* Hepatitis C Virus Infection in Young Persons Who Inject Drugs, U.S. Department of Health and Human Services, Office of the Assistant Secretary for Health, Office of HIV/AIDS and Infections Disease Policy (under contract with Altarum Institute) at 11, *available at*, http://aids.gov/pdf/hcv-and-young-pwid-consultation-report.pdf (last visited September 9, 2013) ("[t]he stigma against drug users, especially injectors, serves as a barrier to HCV testing").  Indeed, Myers has alleged that the inmates on his cellblock stopped associating with him after learning of his Hepatitis C diagnosis.  (Docket # 102 at 22, ¶ 8; Docket # 100-1 at Ex. A at 40-42).

Considering the stigma that may attach to an inmate diagnosed with Hepatitis C, Myers's allegations that he actually suffered opprobrium as a result of the disclosure, and the allegedly gratuitous manner in which Dolac disclosed Myers's medical condition, defendants have not demonstrated that Myers has no constitutionally protected right to confidentiality in his Hepatitis C diagnosis. Accordingly, defendants are not entitled to summary judgment dismissing this claim. *See Fleming v. State Univ. of New York*, 502 F. Supp. 2d at 343 (reviewing history of societal discrimination against individuals with sickle cell anemia as reported in law journal articles and concluding that the condition was likely to "provoke discrimination and intolerance" and thus deserving of constitutional protection).

### b. HIPAA

I reach a different conclusion with respect to Myers's HIPAA claim. "Although HIPAA generally provides for the confidentiality of medical records, . . . an individual cannot sue for its enforcement or for damages caused by disclosures." *Ross v. Westchester Cnty. Jail*, 2012 WL 86467 at *9 (citing 42 U.S.C. §§ 1320d-1 to d-7 and *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases)). Accordingly, Myers's claim asserting a violation of his confidentiality rights under HIPAA is dismissed.[10] *See id.* (dismissing HIPAA claim for disclosure of inmate medical information); *see Williams v. Perlman*, 2009 WL 1652193, *12 (N.D.N.Y.) (recommending dismissal of HIPAA claim for disclosure of inmate medical information), *report and recommendation adopted in part*, 2009 WL 1652188 (N.D.N.Y. 2009); *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co.*

---

[10] The complaint is unclear whether Myers purports to assert a HIPAA claim against Davidson and Koch, as well as Dolac. Assuming it may be read that way, because no private right of action exists under HIPAA, the claim is dismissed as to all defendants.

*of Am.*, 639 F. Supp. 2d at 376 ("[o]nly the Secretary of Health and Human Services or other government authorities may bring a HIPAA enforcement action").

### 3. **Deliberate Indifference**

Issues concerning medical treatment for inmates suffering from Hepatitis C have been heavily litigated within the Second Circuit. *See Ippolito v. Goord*, 2009 WL 3764194, *1 (W.D.N.Y. 2009) ("Hepatitis C has been a not infrequent subject of litigation in courts in the Second Circuit"). Although defendants devote nearly eight pages of their memorandum of law to the deliberate indifference claim, they have failed inexplicably to cite any authority addressing deliberate indifference and Hepatitis C. *See id.* ("[i]t is shocking to the Court that any litigant would make a summary judgment motion on an important matter without any citation to germane legal authority, especially when there is considerable case authority to cite on the precise issue . . .[;] [w]ith such ample authority available, it appears that an appropriate motion would deal with and cite the relevant cases and indicate their relevance to this case based on the specific facts set forth in the supporting affidavits and declarations"). Indeed, not a single case cited by defendants involved an inmate suffering from Hepatitis C. (Docket # 100-6 at 10-17). Despite the glaring omission of pertinent authority on the issue of deliberate indifference claims involving inmates diagnosed with Hepatitis C, this Court will address the motion on its merits.

To establish a claim under Section 1983, a plaintiff must demonstrate that the challenged conduct (1) was "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Section 1983 creates no substantive rights; instead, it provides a "procedure for redress for the deprivation of

rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). In this case, no genuine dispute exists that Dolac was acting under color of state law. Rather, the dispute is whether her actions violated Myers's constitutional rights.

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). "In order to establish an Eighth Amendment[11] claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). This standard contains both a subjective and an objective component. *Id.*

### a. Objective Component

The objective component asks "whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights." *Sowell v. Chappius*, 695 F. Supp. 2d 16, 20 (W.D.N.Y. 2010); *Smith v. Carpenter*, 316 F.3d at 184 ("a prisoner must first make a threshold showing of serious illness or injury"). "A medical need is 'serious' for constitutional purposes if it presents 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Sowell v. Chappius*, 695 F. Supp. 2d at 20 (quoting *Chance v. Armstrong*, 143 F.3d at 702). The objective inquiry is highly fact-specific, but factors to consider include "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment'; (2) whether the medical condition significantly affects daily activities;

---

[11] It is not clear from the record whether Myers was being held in ECHC as a pretrial detainee at the time of the alleged wrongful conduct. If so, his constitutional claims for deliberate indifference would arise under the Fourteenth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69-70 (2d Cir. 2009). In any event, deliberate indifference claims, whether arising under the Fourteenth or Eighth Amendment, are analyzed under the same standard. *See id.* at 72.

and (3) 'the existence of chronic and substantial pain'." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

In cases involving a delay or interruption in the provision of medical treatment, "the seriousness inquiry is 'narrower,' . . . and focuses on the particular risk of harm that resulted from the delay or interruption in treatment rather than the severity of the prisoner's underlying medical condition." *Hamm v. Hatcher*, 2013 WL 71770, *8 (S.D.N.Y. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). Under such circumstances, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract that is relevant for Eighth Amendment purposes." *Smith*, 316 F.3d at 186.

Considering the above standards, the first question is whether this case involves a delay in medical treatment or a denial of treatment. *See Ippolito v. Goord*, 2012 WL 4210125, *9 (W.D.N.Y. 2012) ("Eighth Amendment cases regarding inadequate medical care generally fall into two categories: denial of treatment and delay in treatment [and . . .] the analyses are subtly different"). In this case, it is undisputed that Myers was diagnosed with Hepatitis C by October 15, 2009. At that time, the doctor at ECMC told Myers that he needed to have blood drawn and to be seen by a GI doctor to be evaluated for treatment for the disease. A review of Myers's medical records submitted in support of the motion, however, reveals that Myers did not receive any additional treatment for his Hepatitis C condition. Myers contends that although a blood sample was eventually drawn, he did not receive a treatment or monitoring plan, was not given any medication to treat the Hepatitis C and was not evaluated by a GI doctor.

The defendants argue that "[w]hile incarcerated at the Erie County Holding Center, inmate Myers was evaluated and treated for medical issues not limited to his Hepatitis C status." (Docket # 100-6 at 16). However, defendants have not proffered any facts to demonstrate or even suggest that Myers received treatment for Hepatitis C. To the extent that they rely on Heidelberger's affidavit, which merely attaches pages of medical records without any explanation as to their meaning, such reliance is unavailing; the conclusory assertions contained in the affidavit are simply insufficient to establish that Myers received treatment for Hepatitis C. *See Kelsey v. City of New York*, 2007 WL 1352550, *5 (E.D.N.Y. 2007) ("[c]onclusory affidavits, even from expert witnesses, do not provide a basis upon which to grant or deny motions for summary judgment") (internal quotation and citation omitted), *aff'd*, 306 F. App'x 700 (2d Cir. 2009).

On this record, I conclude that this case involves a denial of medical care claim. *See Hilton v. Wright*, 2013 WL 873826 at *10 ("[b]ecause the alleged deprivation is that defendants failed to provide *any* treatment for [plaintiff's] medical condition, the focus must be on the nature of his medical condition"); *Ippolito v. Goord*, 2012 WL 4210125 at *9-10 (claim properly characterized as denial of treatment as opposed to delay in treatment where plaintiff was originally treated for Hepatitis C, but subsequent treatments were denied); *Hatzfeld v. Eagen*, 2010 WL 5579883 at *10-11 (claim properly treated as a denial of medical care where plaintiff was not "regularly receiving treatment for his underlying condition"). Thus, the objective inquiry should focus upon the nature of Myers's medical condition. *See Hilton*, 2013 WL 873826 at *10.

"It is well-established that [Hepatitis C] is a serious medical condition." *See id.* (citing *Hatzfeld*, 2010 WL 5579883 at *10 (collecting cases)); *Johnson v. Wright*, 234

F. Supp. 2d at 360 ("[c]ase law also recognizes that Hepatitis C qualifies as a serious condition for purposes of an Eighth Amendment analysis") (collecting cases). Accordingly, on the facts before this Court, defendants have failed to establish that Myers did not suffer from a serious medical condition.

### b. **Subjective Component**

The subjective component requires the court to consider "whether the deprivation was brought about by defendants in wanton disregard" of the plaintiff's constitutional rights. *Evans v. Manos*, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)). In other words, the subjective prong addresses the question whether the defendant has acted "with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1154 (1995). Culpability depends on proof that the defendant "knows of and disregards an excessive risk to inmate health or safety; [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As to the subjective component, mere negligence is insufficient, as the Eighth Amendment does not contemplate medical malpractice claims; rather, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety.'" *Smith*, 316 F.3d at 184. This standard is equivalent to recklessness in criminal law. *Id.* "[M]ere negligence is not actionable." *Sowell*, 695 F. Supp. 2d at 20. "Rather, the plaintiff must allege conduct that is 'repugnant to the conscience of mankind' . . . or 'incompatible with the evolving standards of decency that mark the progress of a maturing

society." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). Thus, deliberate indifference requires a plaintiff to demonstrate conduct that is "more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Murphy v. Corr. Med. Servs.*, 2006 WL 367842, *5 (D. Vt. 2006).

The facts before the Court, viewed in the light most favorable to non-movant Myers, present an issue of fact whether Dolac was deliberately indifferent to Myers's medical condition. Myers contends that Dolac was aware of Myers's Hepatitis C status as evidenced by the alleged exchange during which Myers informed Dolac of ECMC's request for an additional blood sample from Myers and by Dolac's alleged broadcast of his condition to the entire cellblock. Myers also filed multiple grievances complaining about Dolac's behavior and the facility's failure to treat him for Hepatitis C. On this record, Myers clearly has raised a genuine issue of fact as to whether Dolac was aware of his diagnosis. Moreover, Myers contends that after the October 2009 cellblock incident, Dolac purposefully impeded Myers's treatment for Hepatitis C by ignoring or destroying his sick call requests. Myers has testified that he received no treatment for his Hepatitis C condition. These factual assertions, if proved at trial, are sufficient for a reasonable jury to conclude that Dolac knew of Myers's medical condition and acted deliberately to deny him treatment. *See Lainfiesta v. Livermore*, 2013 WL 2404021, *9 (N.D.N.Y. 2013) (issue of fact existed where plaintiff contended that he informed defendant of his medical condition and that defendant instructed other officers to prevent plaintiff from attending sick-call); *Hatzfeld*, 2010 WL 5579883 at *12 ("[t]he Second Circuit has found that deliberate indifference may lie where prison officials ignore a physician's recommendation to provide hepatitis treatment even where prison officials do so in accordance with policy").

Defendants attempt to characterize Myers's claim as a mere disagreement over the appropriate treatment for Hepatitis C. (Docket # 100-6 at 14-17). According to defendants, Heidelberger's affidavit establishes that the "impression, diagnosis and treatment rendered to [Myers] at EC[HC], based upon the clinical findings documented in th[e] [medical] records, was reasonable, appropriate and within the accepted standard of care." (*Id.* at 16-17). Thus, defendants continue, because mere disagreement over the proper course of treatment does not amount to a constitutional claim, and because Heidelberger concludes that the treatment provided was adequate, Dolac is entitled to summary judgment.

Defendants' characterization of Myers's claims, however, is inconsistent with the facts asserted in this motion. As discussed above, nothing in the record supports the contention that Myers received *any* care for his Hepatitis C condition, much less adequate care. Nor is there any evidence to suggest that the particular nature of Myers's disease did not require treatment. As discussed above, Heidelberger's conclusory assertions that the medical care received by Myers was "reasonable, appropriate and within the accepted standard of care" are inadequate to justify summary judgment in favor of defendants.

### 4. <u>Interference with Legal Mail</u>

Myers's complaint asserts claims against Calhoun, Wilkie, Howard and Koch arising out of the alleged opening of his legal mail outside of his presence. As to this claim, defendants move for summary judgment on the grounds Myers has failed to raise an issue of fact whether he suffered any injury as a result of the alleged interference with his legal mail. In addition, defendants contend that Howard and Koch are entitled to judgment in their favor because they may not be held liable as supervisors.

24

"Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). A plaintiff claiming that his access to the courts has been infringed as a result of interference with his legal mail "must allege that the defendant 'took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.'" *Id.* (alteration in original) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)) (internal quotation omitted). Thus, the plaintiff must establish that the interference resulted in an actual injury to one of his legal claims. *See id.*; *see Cancel v. Goord*, 2001 WL 303713, *4 (S.D.N.Y. 2001) ("in order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim"). To constitute actual injury, the interference with or harm to the legal claim must be more than mere delay. *See Davis v. Goord*, 320 F.3d at 352 ("[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation") (internal quotation omitted).

In addition to access to the courts, inmates have the "right to the free flow of incoming and outgoing mail" – a right that is protected by the First Amendment. *See id.* at 351. Thus, "a prisoner has a right to be present when his legal mail is opened." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 574-76 (1974)). "An isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Id.*

Under this authority, to prove a constitutional violation, the plaintiff must establish (1) "an ongoing practice of censorship unjustified by a substantial government interest,

or (2) . . . [that] the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Solana v. NYC Dep't of Corr.*, 2012 WL 5466425, *5 (E.D.N.Y. 2012) (quoting *Davis*, 320 F.3d at 351). Stated another way, to establish a constitutional violation arising from the handling of inmate legal mail, the plaintiff must adduce facts that demonstrate either an actual injury to a legal claim or facts from which a factfinder could "infer a pattern of censorship" on the part of the defendants. *See id.*

Reviewing the facts most favorably to Myers, I conclude that he has failed to adduce sufficient facts to create a triable issue of fact as to whether he suffered any actual harm resulting from defendants' tampering with his legal mail. First, Myers conceded at his deposition that he did not suffer any actual injury as a result of the opening of his legal mail. Second, although Myers now contends that his ability to serve defendants in this action was delayed as a result of the opening of his legal mail, such conclusory allegations of harm are insufficient to establish a constitutional violation. *See Davis*, 320 F.3d at 352 ("[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation") (internal quotation omitted); *Lewis v. Johnson*, 2010 WL 3785771, *14 (N.D.N.Y.) ("claim relating to the opening and possible destruction of two items of legal mail, without any showing of how plaintiff was prejudiced in a legal proceeding, does not support a viable First Amendment claim"), *report and recommendation adopted*, 2010 WL 3762016 (N.D.N.Y. 2010); *Hudson v. Greiner*, 2000 WL 1838324, *5 (S.D.N.Y. 2000) ("[p]laintiff's conclusory statement that defendant's actions caused a 'delay of action in discoveries which was fatal to my disposition' is not enough to prevent this claim from being dismissed"); *see also*

*Walton v. Waldron*, 886 F. Supp. 981 (N.D.N.Y. 1995) (granting summary judgment where plaintiff failed to make "the requisite showing of harm").

In addition, Myers has failed to set forth any facts to suggest an ongoing practice of censoring of his legal mail. Myers has identified only one instance in which he alleges that his mail was impermissibly opened outside of his presence, which is insufficient to state a constitutional violation. *See Solana v. NYC Dep't of Corr.*, 2012 WL 5466425 at *6 ("the test contemplates at least *two* incidents of mail tampering to trigger an inquiry into whether a constitutional violation occurred"). Although Myers testified that on several occasions his legal mail had tape on the envelope when it was delivered to him, such conclusory allegations are insufficient to suggest a pattern of censorship. *See Deleon v. Hoffman*, 2012 WL 75805, *9 (W.D.N.Y. 2012) (granting summary judgment where plaintiff offered nothing more than "wholly conclusory allegations, speculation and conjecture," which failed to demonstrate that "his mail was tampered with at all") (internal quotation omitted); *Solana*, 2012 WL 5466425 at *6 (conclusory assertions that mail had been opened "many, many times" were not "facts from which this court could infer a pattern of censorship"); *Cancel v. Goord*, 2001 WL 303713 at *7 (plaintiff's complaint deficient where he alleged "only two instances [of] opening of incoming legal mail with no indication that such practices [were] ongoing . . . [and] [w]ithout alleging additional facts to establish a pattern and practices that rises to the level of constitutionally impermissible censorship").

Accordingly, defendants are entitled to summary judgment dismissing this claim.[12]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment **(Docket # 100)** is **GRANTED in part and DENIED in part**.  A <u>trial date status conference</u> will be held with the undersigned at 2310 U.S. Courthouse, 100 State Street, Rochester, New York 14614 on **November 7, 2013**, at **10:00 a.m.**  The Court will make the necessary arrangements with the correctional facility for plaintiff to participate by telephone for the conference.

**IT IS SO ORDERED.**


                                                    *s/Marian W. Payson*
                                                    MARIAN W. PAYSON
                                                    United States Magistrate Judge


Dated: Rochester, New York
            September   12   , 2013

---

[12]  Having concluded that the claim should be dismissed on its merits, the Court does not reach the question of supervisory liability as to Koch and Howard.  *See Elek v. Inc. Village of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("[a]bsent an underlying constitutional violation, there is no cognizable claim for supervisor liability") (quoting *Bryant v. Wright*, 2010 WL 3629443, *9 n.1 (S.D.N.Y. 2010)).